The decision below is hereby signed.  Dated:
February 27, 2006.

_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SYLVIA M. SMITH, | ) | Case No. 04-01581 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ROCKSTONE CAPITAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adversary Proceeding No. |
| WALKER-THOMAS FURNITURE | ) | 04-10457 |
| COMPANY, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION REGARDING MOTION FOR DEFAULT JUDGMENT

Before the court is a motion filed by the plaintiff, Rockstone Capital, LLC ("Rockstone"), for default judgment against Andre Smith, one of four defendants in this adversary proceeding.  For the reasons set forth below, the court denies Rockstone's motion at this time.

I

Rockstone filed an amended four-count complaint against

Walker-Thomas Furniture Company, Inc., William Smith, the debtor Sylvia Smith, and Andre Smith on January 19, 2005.  Rockstone seeks the recovery of alleged fraudulent conveyances by the defendants pursuant to D.C. CODE ANN. § 28-3105 et seq. and (presumably)[1] 11 U.S.C. § 544(b),[2] as well as a determination of non-dischargeability against the debtor under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).  Pursuant to FED. R. CIV. P. 55 (as incorporated by FED. R. BANKR. P. 7055), Rockstone filed a motion for entry of default with respect to Andre Smith on June 13, 2005.  The court granted that motion on June 30, 2005.

Rockstone filed the instant motion on October 7, 2005. Rockstone seeks final judgment against Andre Smith with respect to the first two counts of Rockstone's complaint.  To date, Andre Smith has not answered Rockstone's complaint.  He has, however,

---

[1] Rockstone does not specifically state in its Complaint that it seeks to recover the defendants' alleged fraudulent transfers under 11 U.S.C. § 544, but cites instead the applicable District of Columbia statutes governing fraudulent transfers (Compl. ¶¶ 33 & 38).  Nevertheless, the court will construe Rockstone's action as one pursuant to § 544, as Rockstone has not requested relief from the automatic stay of 11 U.S.C. § 362, which it would need to do to pursue its D.C. fraudulent conveyance causes of action post-petition.  See note 13, infra.

[2] Rockstone alleges that the debtor conveyed certain real property to her son, Andre Smith, in exchange for $10.00 as a means to avoid the repercussions of her default on a note and guaranty on the property held by Rockstone (Compl. ¶¶ 26-27). Andre Smith, in turn, allegedly conveyed the same property to co-defendant Mohamed Afrah for $10.00, who then borrowed $30,130.00 plus interest from Mr. Smith (Compl. ¶¶ 35-36).  In so doing, the debtor and Mr. Smith allegedly "absorbed all the equity in the Property and left no monies for Rockstone . . ." (Compl. ¶ 37).

2

filed an objection to a separate motion to compel filed by Rockstone.

In his objection, Andre Smith states that he did not receive notice of this case until October 29, 2005, and that he is representing himself pro se. The substance and tone of his objection suggest that Mr. Smith wishes to contest the allegations levied against him by Rockstone. Without the benefit of counsel, however, he may not know how to defend himself in accordance with the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, and the local rules of this court.

II

"'When an application is made to the court under Rule 55(b)(2) for the entry of a judgment by default, the [trial] judge is required to exercise sound judicial discretion in determining whether the judgment should be entered.'" Savage v. Scales, 310 F. Supp. 2d 122, 127 (D.D.C. 2004) (quoting 10A Wright, Miller & Kane, Fed. Prac. and Proc. § 2685 (3d ed. 1998)). "Judicial policy strongly favors deciding cases on their merits rather than by default judgments; therefore, default judgments are usually reserved for totally unresponsive parties." Id. (emphasis added). "This line of reasoning rhymes with the Federal Rules of Civil Procedure, which generally embody an effort to ensure that courts decide cases based on the strength of the adversaries' arguments rather than on the skillful use of

technicalities." Canady v. Erbe Elektromedizin GMBH, 307 F. Supp. 2d 2, 9 (D.D.C. 2004).

Courts in this circuit use a three-prong test to determine whether to grant a motion for default judgment: "whether (1) the default was willful; (2) a set-aside would [unduly] prejudice [the] plaintiff; and (3) the alleged defense was meritorious." Jackson v. Beech, 636 F.2d 831, 836 (D.C. Cir. 1980) (quoting Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 374 (D.C. Cir. 1980)). All three criteria weigh against Rockstone in this case. For that reason, the court will deny Rockstone's motion at this time.

   A.   Lack of Response

Although Mr. Smith has not yet filed a response to Rockstone's complaint, his silence can hardly be described as "a deliberate decision to default . . . ." Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co., Inc., 288 F. Supp. 2d 22, 26 (D.D.C. 2003). Indeed, if Mr. Smith's assertions regarding service of process in this case are true, his prior silence in this case is not his fault at all.

Mr. Smith states in his objection to a separate motion filed by Rockstone that he "received the first notice regarding this proceeding on October 29, 2005" (Obj. ¶ 3), and that he is "just becoming aware of all the facts in this proceeding" (Obj. ¶ 5). The court's records support this assertion. Prior to filing its

certificate of discovery with respect to Andre Smith, the address used by Rockstone for service purposes--including the summons and complaint for the adversary proceeding--was "4277 Mazarin Place, Fairfax, Virginia 22033." The court mailed a copy of its order of default to that same address on July 2, 2005, and received a notice of returned mail on July 24, 2005. At that point in time, Andre Smith had not appeared before the court in person or filed any motions or pleadings in the adversary proceeding.

The situation changed when Rockstone mailed its certificate of discovery to Mr. Smith's current address in Columbia, Maryland. In response to Rockstone's discovery requests, Mr. Smith agreed to be deposed by Rockstone, but declined to answer questions that did not "seem[] relevant to the discovery requested by [Rockstone]" (Obj. ¶ 3). When Rockstone filed a motion to compel Andre Smith's testimony, Mr. Smith filed an "objection" to the motion. In other words, Mr. Smith has participated in this case ever since Rockstone began to serve process on him at the correct address.

Various statements in Mr. Smith's objection indicate that he intends to refute the allegations of Rockstone. For example, Mr. Smith argues in his objection that he "received fair consideration for the property" at issue in this proceeding (Obj. ¶ 5). He claims that he "had no prior knowledge" of any harm caused to Rockstone by the transfer of the property at issue "and

5

had no intention to harm [Rockstone]" (Obj. ¶ 5).  Mr. Smith states unequivocally that "he committed no act of fraud" (Obj. ¶ 7).  At the same time, Andre Smith admits that he is a pro se defendant with little experience in legal matters.  It is therefore not surprising that he has not produced a formal answer to a complaint filed against him nearly eleven months before Mr. Smith even knew a lawsuit against him existed.[3]

Given these statements, and given that Andre Smith's failure to appear in the case earlier appears to have been due to Rockstone's failure to serve him at the correct address, the court cannot conclude that Mr. Smith has been "unresponsive or otherwise dilatory in defending [his] interests."  Scimed Life Systems, Inc. v. Medtronic Ave. Inc., 297 F. Supp. 2d 4, 9 (D.D.C. 2003).  To the contrary, where, as here, the defendant to an action "did not even know of the default," Jackson, 636 F.2d at 837, default judgment is inappropriate.  Id.; see also Combs v. Nick Garin Trucking, 825 F.2d 437, 442-44 (D.C. Cir. 1987) (holding that default judgment should be vacated where there was no service of process). Rockstone's motion for default judgment is premature for this reason alone.

---

[3]  Based on Andre Smith's statements in his opposition to Rockstone's motion to compel, it is unclear whether he has seen Rockstone's complaint even at this late date.  For that reason, the court will direct Rockstone and Mr. Smith to report whether service of process has been effected in its order accompanying this opinion.

B.  <u>Undue Prejudice to Rockstone</u>

The court sees no prejudice to Rockstone in denying its motion for default judgment at this time other than delay in obtaining a final judgment, which "is not usually a sufficient basis for finding that the moving party has been prejudiced." <u>Honda Power Equip. Mfg., Inc. v. Woodhouse</u>, 219 F.R.D. 2, 5 (D.D.C. 2003).  On the other hand, "forcing a party to expend further time and money to collect on a claim as to which there are no meritorious defenses unfairly prejudices [a] plaintiff to some degree."  <u>Int'l Painters Fund</u>, 288 F. Supp. 2d at 31.  The court will therefore turn to the third prong of the <u>Jackson</u> test, as that determination will inform the court's understanding of the prejudice to Rockstone arising from a denial of default as well.

C.  <u>Merits of Defense</u>

"For purposes of resolving a motion for default judgment, a defense is deemed meritorious if it is a complete defense, such as lack of subject matter jurisdiction or a denial."  <u>Honda Power Equip. Mfg., Inc.</u>, 219 F.R.D. at 5-6.  Mr. Smith has not filed an opposition to Rockstone's motion for default judgment.  He has, however, filed an opposition to Rockstone's motion to compel that raises a complete defense to Rockstone's action against him: failure of service of process.

"[S]ervice of summons is the procedure by which a court

having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." Miss. Publishing Corp. v. Murphree, 326 U.S. 438, 444-45 (1946). Unlike the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure permit a plaintiff to serve process

> by first class mail postage prepaid as follows:
> (1) [u]pon an individual other than an infant or incompetent, by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession . . . .

FED. R. BANKR. P. 7004(b).

Courts require "a higher standard of care when serving a party defendant" using "the abbreviated procedure of service by mail," McElhaney v. Student Loan Services (In re McElhaney), 142 B.R. 311, 313 (Bankr. E.D. Ark. 1992), because of the jurisdictional and "due process ramifications" of improper service. DuVoisin v. Arrington (In re Southern Indus. Banking Corp.), 205 B.R. 525, 533 (E.D. Tenn. 1996), aff'd 112 F.3d 248 (6th Cir. 1997).[4] "Mailing to a respondent's 'last known address' is not sufficient to effect service under this rule if

---

[4] Accord Hasbrouck v. Valeu, 53 B.R. 549, 553 (Bankr. D.N.D. 1985) ("The service of process must comply with technical requirements of the Rules as well as due process considerations of 'fair play and substantial justice.'") (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (further citation omitted).

the respondent is not living at that address at the time service is attempted." In re Barry, 330 B.R. 28, 33 (Bankr. D. Mass. 2005).[5] "Even receipt of actual notice does not remedy the technically defective service[,] through which the court fails to obtain personal jurisdiction." In re Valeu, 53 B.R. at 553.

Assuming, as the court must for purposes of the instant motion,[6] that Mr. Smith's statements in his opposition to Rockstone's motion to compel are true, and setting aside any consideration as to whether Rockstone's case against Mr. Smith should be dismissed pursuant to FED. R. CIV. P. 12(b)(5) (as

---

[5] Accord In re Southern Indus. Banking Corp., 205 B.R. at 531 (finding no service of process on defendant where summons and complaint were sent to previous address of defendant); but cf. Burke v. Greaves (In re Greaves), 121 B.R. 234, 236 (N.D. Ill. 1990) (finding proper service of process under Rule 7004(b)(1) so long as plaintiff's service of process "was reasonably calculated to provide defendant with notice at his dwelling house"); Goldberg v. Weichert (In re Timberline Energy Inc.), 70 B.R. 450, 453 (Bankr. N.D.N.Y. 1987) (holding that service of process via mail to address listed by defendant in court filings satisfies Rule 7004). Although the courts in both In re Greaves and In re Timberline Energy Inc. downplay the requirement that service of process be made to the actual dwelling of the defendant in favor of a more vague "reasonableness" requirement, those decisions are distinguishable because the courts in those cases rely on filings made by the defendants in those actions regarding their own cases, effectively estopping the defendants from asserting that the addresses used by the plaintiffs were wrong.

[6] A defendant opposing a default judgment does not need to prove or even demonstrate a likelihood of success with respect to her defense; a mere allegation of a total defense will suffice. Jackson, 636 F.2d at 837 ("final criterion" of three-prong test satisfied where defendant "alleged a meritorious defense"); Keegel, 627 F.2d at 374 (assertions of total defense should not be judged by a "likelihood of success" standard).

9

incorporated by FED. R. BANKR. P. 7012),[7] Rockstone cannot succeed on its claim against Mr. Smith unless and until it has properly served him with a court-issued summons and a complaint.  Mr. Smith has asserted a meritorious defense to Rockstone's allegations, even if he did raise it in response to a different motion filed by Rockstone.

   D.   Standing under 11 U.S.C. § 544(b)

Finally, the court has concerns of its own regarding the standing of Rockstone to assert a cause of action under § 544 of the Bankruptcy Code, which permits

> the trustee [to] avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under [11 U.S.C. § 502] or that is not allowable only under [11 U.S.C. § 502(e)].

11 U.S.C. § 544(b) (emphasis added).  "Standing can be raised at any point in a case proceeding and, as a jurisdictional matter, may be raised, sua sponte, by the court."  Steffan v. Perry, 41 F.3d 677, 697 n.20 (D.C. Cir. 1994).

"Sections 544(b) and 548 of the [Bankruptcy] Code expressly vest in the trustee or debtor-in-possession the right to assert a

---

[7] FED. R. BANKR. P. 7004(m) requires that a plaintiff's case be dismissed without prejudice "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint" unless the plaintiff can show "good cause" for an extension of time in which to serve the unserved defendant.  Rockstone's complaint was filed on January 19, 2005-- more than a year prior to today's date.

10

claim for fraudulent conveyance under state or federal law." <u>AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)</u>, 117 B.R. 789, 799-800 (Bankr. S.D.N.Y. 1990). "It is axiomatic that a duly qualified trustee in bankruptcy represents the estate and is the only proper party to maintain any action under [Bankruptcy] Code § 544(b) . . . ." <u>Best Mfr., Inc. v. White Plaints Coat & Apron, Inc. (In re Daniele Laundries, Inc.)</u>, 40 B.R. 404, 408 (Bankr. S.D.N.Y. 1984). "The Code section does not give avoidance powers to creditors, nor have the courts generally allowed creditors to invoke such power." <u>Bank of Cal. v. LMJ, Inc. (In re LMJ, Inc.)</u>, 159 B.R. 926, 928 (D. Nev. 1993). "Consequently, many courts have held that an individual creditor has no standing to bring a fraudulent conveyance action under § 544(b)." <u>Larson v. Munoz</u>, 111 B.R. 928, 930 (D. Colo. 1990).[8]

The court recognizes that some courts "have . . . permitted individual creditors to pursue claims under the trustee's strong-arm provisions," <u>In re Lewis</u>, 1996 WL 33401163, *5 (Bankr. S.D. Ga. July 22, 1996), if "[o]nly under extreme

---

[8] <u>But see</u> <u>Dehmer v. Temple</u>, 44 B.R. 992, 995 (S.D. Miss. 1984) ("Creditors may utilize [§] 544 in connection with state fraudulent conveyance statutes to set aside fraudulent conveyances.").

circumstances . . . ." Id.[9] But other courts have refused to recognize any set of circumstances under which an individual creditor might sue to recover a fraudulent transfer on the grounds that any such exception would be contrary to congressional intent as expressed in the plain language of the statute. See, e.g., Surf N Suns Apartments, Inc., R.D.M.H. v. Dempsey, 253 B.R. 490, 492-93 (M.D. Fla. 1999) (construing 11 U.S.C. § 548); Met-Al, Inc. v. Gabor (In re Metal Brokers Int'l, Inc.), 225 B.R. 920, 922 (Bankr. E.D. Wis. 1998) (construing 11 U.S.C. §§ 547-549). The Supreme Court's relatively recent decision in Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1 (2000), where the Court held that individual creditors did not have standing to sue under 11 U.S.C. § 506(c) because the plain language of the statute restricted the right to sue to the "trustee," id. at 6-14, suggests that this latter approach may be the correct one.[10]

Moreover, even if Rockstone could conceivably assert

---

[9] See also Canadian Pac. Forest Products Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.), 66 F.2d 1436, 1440-41 (6th Cir. 1995) (construing §§ 547 and 548 to permit derivative standing for creditors under certain circumstances); Lilly v. FDIC (In re Natchez Corp. of W. Va.), 953 F.2d 184, 187 (5th Cir. 1992) (construing § 549 to permit creditors to stand in for chapter 7 trustee if court authorizes procedure).

[10] But see Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 556-59 (3d Cir. 2003) (court can authorize creditors' committee to pursue fraudulent conveyances using its equitable powers).

"derivative standing" to bring its fraudulent conveyance action, it is far from certain that it could do so in this case.  Most courts that allow a creditor to bring an action under § 544(b) "have found it imperative that the creditor first seek approval from the bankruptcy court and demonstrate that the claim is potentially meritorious," In re Munoz, 111 B.R. at 931,[11] although a few courts have waived this requirement.  See In re Lewis, 1996 WL at *6 (permitting creditor to assert § 544 action because standing issue was "waived" by the other party and "it would be imprudent to appoint a trustee when a willing creditor has already undertaken the litigation").[12]  Yet, Rockstone has not sought authorization from this court to pursue the trustee's § 544(b) claims, and (to the best of the court's knowledge) has not made a formal demand on the chapter 7 trustee to pursue the claim prior to its initiation of this adversary proceeding, either.  See In re Gibson Group, Inc., 66 F.3d at 1444 (listing as another "'consideration'" in deciding whether to grant creditor derivative standing the "requirement that the creditor(s) have made a demand on the debtor or trustee for

---

[11] Accord Hyman v. Harrold (In re Harrold), 296 B.R. 868, 874 (Bankr. M.D. Fla. 2003) (construing §§ 547 and 548); NBD Bank, N.A. v. Fletcher (In re Fletcher), 176 B.R. 445, 454 (Bankr. W.D. Mich. 1995) (same).

[12] See also In re Gibson Group, Inc., 66 F.3d at 1441-42 (favoring "more flexible approach" taken by some courts in deciding whether to grant derivative standing over specific prerequisites).

action and the demand was refused") (quoting <u>Louisiana World Exposition, Inc. v. Fed. Ins. Co. (In re Louisiana World Exposition, Inc.)</u>, 832 F.2d 1391 (5th Cir. 1987)).

Finally, the court lacks certainty as to whether Rockstone could maintain its adversary proceeding under an alternative legal theory fitting the same facts alleged in its complaint. At least one court has allowed a creditor to assert a state fraudulent conveyance action directly rather than via the "strong-arm" mechanism of § 544. <u>Osherow v. Porras (In re Porras)</u>, 312 B.R. 81, 94 (Bankr. W.D. Tex. 2004).[13] The court has doubts, however, as to whether it would have subject-matter jurisdiction over such an action, as a recovery by Rockstone

---

[13]  The court in <u>In re Porras</u> distinguished between property that is fraudulently transferred, which the court considered property of the estate, and the state law fraudulent conveyance cause of action, which remained with the creditor (in this case, the IRS) post-petition. <u>In re Porras</u>, 312 B.R. at 94. Ordinarily, a creditor is barred by the automatic stay of 11 U.S.C. § 362 from pursuing a state fraudulent conveyance claim until the bankruptcy case is closed and the stay expires. See <u>Klingman v. Levinson</u>, 158 B.R. 109, 113 (N.D. Ill. 1993) ("The trustee's exclusive right to maintain a fraudulent conveyance cause of action expires and creditors may step in (or resume actions) when the trustee no longer has a viable cause of action."); <u>M & I Heat Transfer Products, Ltd. v. Gorchev (In re Gorchev)</u>, 275 B.R. 154, 171 (Bankr. D. Mass. 2002) (right to avoid fraudulent transfers "belongs to the [d]ebtor's bankruptcy estate and, unless abandoned, may be prosecuted only by the [c]hapter 7 [t]rustee"). To overcome this hurdle, the court in <u>In re Porras</u> modified the stay <u>nunc pro tunc</u> "to allow the IRS to assert for the benefit of the bankruptcy estate, jointly with the [t]rustee, the fraudulent transfer causes of action against the [d]ebtor and the [transferee]." <u>Id.</u>

14

might not have any impact on the administration of the estate.[14]

### III

Given the jurisdictional issues yet to be resolved in this case, as well as Mr. Smith's apparent desire to defend himself and the seeming inadvertence of his prior failure to respond to Rockstone's complaint, the court deems it appropriate to deny Rockstone's motion for default judgment at this time.  The court will enter a separate order denying the motion and directing both parties to inform the court as to whether Mr. Smith has received service of process of the complaint and summons in this case, and, if so, when that service was effected.  The future of this proceeding with respect to Andre Smith will depend on the parties' responses and the conclusions of the court drawn therefrom.

An order follows.

[Signed and dated above.]

Copies to:

---

[14] One possible solution to Rockstone's problem with standing would be to have the trustee appoint Rockstone as its own representative subject to court approval. See, e.g., McCarthy v. Navistar Fin. Corp. (In re Vogel Van & Storage, Inc.), 210 B.R. 27, 32-33 (N.D.N.Y. 1997) (permitting such an arrangement for purposes of pursuing preference action).  Of course, any recovery made by Rockstone as a representative of the trustee would necessarily go to the estate for distribution to all of the debtor's creditors, not just Rockstone. See id. at 33 (creditor could act as agent for chapter 7 trustee because the trustee would "retain[] control over the claim and over any assets which are brought into the estate through the preference action").

James E. Clarke
Rita Ting-Hopper
Draper & Goldberg, PLLC
803 Sycolin Road
Suite 301
Leesburg, VA 20175
Counsel for the plaintiff Rockstone Capital, LLC

Vere O. Plummer
Plummer and Associates
1090 Vermont Avenue, NW Suite 800
Washington, DC 20005
Counsel for the debtor Sylvia M. Smith

Rockstone Capital, LLC
c/o Union Financial Corporation
5510 Edson Lane
Rockville, MD 20852
Plaintiff

Sylvia M. Smith
310 Jefferson St., NW
Washington, DC 20011
Debtor

Walker-Thomas Furniture Co, Inc.
c/o William Smith, President
6804 25th Avenue
Hyattsville, MD 20782
Co-defendant

William Smith
6804 25th Avenue
Hyattsville, MD 20782
Co-defendant

Andre L. Smith
9490 Timesweep Lane
Columbia, MD 21045

Mohamed O. Afrah
2229 10th Street, NW
Washington, DC 20001