The decision below is signed as a decision of

the court.

Signed: August 23, 2007.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SYLVIA M. SMITH, | ) | Case No. 04-01581 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ROCKSTONE CAPITAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 04-10457 |
| WALKER-THOMAS FURNITURE CO., | ) | |
| INC., *et al.*, | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |
| Defendants. | ) | |

MEMORANDUM DECISION RE PLAINTIFF'S REQUEST
TO HOLD DEFENDANT SYLVIA M. SMITH IN CONTEMPT
OF COURT AND THAT THE ADVERSARY PROCEEDING BE
REMANDED TO THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Pursuant to an order entered on July 17, 2007 (D.E. No. 97), Rockstone Capital, LLC ("Rockstone"), the plaintiff in this adversary proceeding, has filed a report updating the court as to the status of this litigation (D.E. No. 102, filed August 2, 2007). In its report, Rockstone alleges that the defendant, Sylvia M. Smith, has not paid $500.00 to Rockstone as

contemplated in the court's prior order (D.E. No. 89) entered on March 9, 2007, and asks that the court schedule a hearing at which Smith would need to show cause why she ought not be held in contempt of court due to her failure to abide by the court's prior order.  For the following reasons, I will deny that request, and instead issue a final judgment for the $500.00 together with interest from the date of the order of March 9, 2007, to the date of entry of the judgment.  That will leave nothing more to do in this adversary proceeding than to remand the proceeding to the Superior Court to permit it to proceed with Rockstone's claims regarding an alleged fraudulent conveyance to Andre Smith.

I

Regarding the $500.00 that was awarded to Rockstone, I first address whether the $500.00 may be collected via contempt sanctions, and then address the alternative remedy available to Rockstone to collect the $500.00.

A.

With respect to the failure to pay the $500.00, the court deems sanctions to be inappropriate as that would constitute the utilization of contempt sanctions to collect a monetary obligation.  A court's contempt powers are not ordinarily used in the enforcement of a monetary judgment.  Instead, a judgment-holder resorts to execution remedies under Fed. R. Civ. P. 69.

"[W]hen a party fails to satisfy a court-imposed money judgment the appropriate remedy is a writ of execution, not a finding of contempt." Combs v. Ryan's Coal Co., 785 F.2d 970, 980 (11th Cir.), cert. denied sub nom. Simmons v. Combs, 479 U.S. 853 (1986). Accord In re Estate of Bonham, 817 A.2d 192, 195-96 (D.C. 2003) (use of contempt to collect counsel fee award); Aetna Cas. & Sur. Co. v. Markarian, 114 F.3d 346, 349 (1st Cir. 1997); Shuffler v. Heritage Bank, 720 F.2d 1141, 1147-48 (9th Cir. 1983); Granfinanciera, S.A. v. Nordberg (In re Chase & Sanborn Corp.), 872 F.2d 397 (11th Cir. 1989); In re Property of Adam, 100 P.3d 77, 88 (Haw. Ct. App. 2004); Ardex Labs., Inc. v. Cooperider, 319 F. Supp. 2d 507, 509 (E.D. Pa. 2004) (writ of execution, not contempt, proper course for enforcing award of attorney's fees).[1]

---

[1] As observed in Baxter State Bank v. Bernhard, 186 F.R.D. 621, 623 (D. Kan. 1999):

> The court notes that, as a general rule, courts addressing the execution of judgments hold that "the proper means ... to secure compliance with a money judgment is to seek a writ of execution." Hilao v. Estate of Marcos, 95 F.3d 848, 854 (9th Cir. 1996) (quoting Shuffler v. Heritage Bank, 720 F.2d 1141, 1148 (9th Cir. 1983)). According to MOORE'S FEDERAL PRACTICE,
>
>> Rule 69(a) provides that the "process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise." This language appears to contemplate a means to enforce money judgments other than by writ of execution. However, such other means are

The order to pay $500 was a compensatory fine based on the debtor's failure to comply with interrogatories and requests to produce documents.  It constituted a judgment (albeit not yet cast as a final one under Fed. R. Civ. P. 54(b) for which execution could commence), is enforceable like any other fine, civil or criminal, imposed by the courts to compensate for or to deter misconduct, and is treated like other civil monetary judgment awards.  This is explicitly so in the case of criminal fines (see 18 U.S.C. § 3613 (judgment imposing a criminal fine is collectible using procedures for collection of civil judgment)) and is implicitly so in the case of civil fines.

Contempt is available to assist in the collection of such a monetary judgment only in rare circumstances, none of which exist here.  For example, if a judgment-debtor has failed to turn over assets required to be turned over pursuant to an inquiry into

> confined only to cases in which established principles warrant equitable relief, such as when execution would be an inadequate remedy. For example, enforcement through the imposition of a contempt sanction would not be authorized absent exceptional circumstances.

13 MOORE'S FEDERAL PRACTICE 3D § 69.02 (1997).  See also Combs v. Ryan's Coal Co., . . .; Gabovitch v. Lundy, 584 F.2d 559, 560-61 (1st Cir. 1978) ("[T]he legislative history and judicial application of Rule 69(a) make clear that the first sentence of the Rule expresses a limitation on the means of enforcement of money judgments and does not create a general power to issue writs of execution in disregard of the state law incorporated by the rest of the Rule").

assets available to satisfy the judgment (cf. 28 U.S.C. § 3204 (remedy of an installment payment order)), contempt may be an appropriate means of enforcing the judgment.  See Freeman v. Heiman, 426 F.2d 1050 (10th Cir. 1970)(order to pay judgment in installments, based on hearing on assets, was enforceable by contempt); Atlas Corp. v. DeVilliers, 447 F.2d 799, 803 (10th Cir. 1971).  See also Adam, 100 P.3d at 87-89 (contempt is utilized only when execution has proven to be an inadequate remedy, and there is a demonstrated ability to comply).[2] Similarly, if the debtor avoids a writ of execution by misleading the marshal and liquidating assets, thus engaging in a contempt of the court's writ, contempt sanctions may be available to coerce payment of the judgment.  Laborers' Pension Fund v. Dirty Work Unlimited, Inc., 919 F.2d 491, 494 (7th Cir. 1990).

Finally, courts have used the contempt power to assure compliance with a federal statute requiring payments to a class of beneficiaries.  See Combs, 785 F.2d at 980 n.4; Pierce v. Vision Invs., Inc., 779 F.2d 302 (5th Cir. 1986) (prohibition of 28 U.S.C. § 2007(a) against imprisonment for debt in Texas did not apply to judgment obtained by Secretary of Housing and Urban Development requiring developer to escrow monies to pay to

---

[2] In this adversary proceeding, no inquiry has been held to identify assets to be turned over to satisfy the monetary sanction award (and the court has not determined whether such an approach is appropriate under Fed. R. Civ. P. 69 and the law of the District of Columbia which it incorporates).

5

purchasers who had been harmed by violations of Interstate Land Sales Full Disclosure Act). Similarly, this court has concluded in other cases that orders directing disgorgement of fees by an attorney or petition preparer are enforceable by contempt because they constitute a restitutionary remedy intended to protect debtors with respect to fees that conferred upon them no benefit. The compensatory fine here was a damage award, not an order partaking a restitutionary character.

The order here did direct that the $500.00 be paid. However, that command did not specify that payment partook the character of turnover or specify that failure to pay would be on pain of contempt. The command should be viewed as merely setting forth the debtor's obligation to pay the award.

The $500.00 award was based on Fed. R. Civ. P. 37 (authorizing awards of fees in discovery matters). While <u>Bonham</u>, 896 A.2d at 196 n.7, left open the question whether monetary sanctions imposed under the analogs of Fed. R. Civ. P. 11, Fed. R. Bankr. P. 9011 and Fed. R. Civ. P. 37 ought to be treated differently than other monetary awards, the court can discern no rational basis, in the circumstances of this proceeding, for according the award here different treatment than other monetary awards. Once a compensatory award is made under one of those rules, it fixes the damages and leaves collection of the award a separate matter. I need not decide whether a court can treat

payment of such an award as a condition to a defendant's continued defense against a plaintiff's claims:[3] the claims against the debtor as the defendant in this adversary proceeding have already been dismissed as a matter of law.

Because coercive contempt sanctions may not be employed to collect a monetary judgment, it follows that compensatory contempt sanctions are equally unavailable. Ordinarily, the so-called American rule is that attorney's fees are not recoverable in litigation or in the collection of a judgment.[4] To the extent that Rockstone seeks to recover damages for the delay in payment, Rockstone is entitled to such relief as explained below.

B.

Because Rockstone must treat the $500.00 award as a monetary

---

[3] A failure to comply with a discovery order can lead to a judgment by default. Fed. R. Civ. P. 37(b)(2)(C). That remedy arguably ought not be employed if a defendant is *not* able to pay the award, and has not deliberately attempted to run up the other side's attorney's fees. By contrast, if a defendant's persistent failure to comply with discovery obligations is subjecting the plaintiff to the expense of attorney's fees as an apparent means of discouraging the plaintiff from pursuing its claims, it would arguably be appropriate for the court to take such circumstances into account when deciding whether to award a judgment by default.

[4] The court does not address whether fees incurred in collecting a compensatory contempt award can be treated as damages traceable to the contempt (recoverable as a compensatory contempt sanction) and hence an exception to that rule. The court did not premise its $500 award based on contempt but instead based it on a failure to comply with discovery obligations.

7

judgment, Rockstone is entitled to recover interest on the judgment.  The $500.00 judgment was not made a final judgment, and thus there has been delay in payment from the date of entry of the award (as a non-final judgment) to the date of entry of a final judgment that can be collected via execution.  Pre-judgment interest will be awarded from March 9, 2007, at the monthly prime rate for March 2007 of 6.25% per annum to the date of entry of the final judgment on today's date.  Accordingly, pre-judgment interest of $14.38 will be awarded, for a final judgment amount of $514.38.  The final judgment of $514.38 will bear interest after entry of the judgment as provided by 28 U.S.C. § 1961.

A final judgment follows respecting the discharged prepetition claims against Sylvia M. Smith, and the award of sanctions.  Pursuant to Fed. R. Civ. P. 54(b), the court expressly determines that there is no just reason for delay and expressly directs the entry of that judgment as a final judgment.  The defendant will be entitled to file a bill of costs for what should be the relatively small amount of taxable costs she incurred in successfully defending the prepetition claims asserted against her in this proceeding.  Any award of costs can be set off against the portion of the judgment awarding $500.00 plus interest to Rockstone.

II

The only remaining claims relate to the alleged fraudulent conveyance to Andre Smith. The court declined to hear those claims because the court believed that while the bankruptcy case was pending, only the bankruptcy trustee should be allowed to pursue the claims. However, the trustee has filed a so-called no-asset report stating that there are no assets to administer for the benefit of creditors. The court apprised him of the fraudulent conveyance claims, but he has not sought to withdraw his no-asset report or to intervene in this proceeding. The court infers that he has no intention of pursuing such claims. Accordingly, the bankruptcy case is ready to be closed except for disposing of this adversary proceeding.

Accordingly, I will remand this proceeding to the Superior Court where Rockstone commenced its pursuit of the claims regarding the alleged fraudulent conveyance. I will also enter an order in the bankruptcy case lifting the automatic stay so that pursuit of the claims regarding the alleged fraudulent conveyance to Andre Smith may be pursued, and directing the clerk to proceed to close the bankruptcy case in due course.

Clearly, Andre Smith will be a proper party to such litigation in the Superior Court, but what about the other parties? It appears that Walker-Thomas Funiture Company, Inc. and William Smith are only nominally parties but that no relief

is sought against them regarding the fraudulent conveyance.[5] Similarly, it appears that no relief is sought against Mohamed O. Afrah.[6] Presumably Rockstone will file a motion to dismiss Walker-Thomas Furniture Company, Inc., William Smith, and Mohamed O. Afrah as parties once the litigation resumes in the Superior Court.

    Whether the debtor, Sylvia Smith, should remain a party is a slightly different story.  Rockstone sought to recover from her to the extent she enjoyed the fruits of the alleged fraudulent conveyance.  In prior rulings, this court has held that Sylvia

---

[5] The Second Amended Complaint seeks relief with respect to a conveyance of real property from the debtor, Sylvia M. Smith, to Andre Smith that was allegedly in fraud of Rockstone's rights (or the rights of Rockstone's predecessor-in-interest) as a creditor with respect to a debt owed by the debtor.  The debt that the debtor owed was on a guarantee of an obligation owed by Walker-Thomas Furniture Company, Inc., a debt guaranteed by William Smith as a co-guarantor with the debtor, Sylvia M. Smith.

[6] Rockstone alleges that the debtor conveyed the subject real property to Andre Smith in a fraudulent conveyance and that Andre Smith, in turn, conveyed the real property to the defendant Mohamed O. Afrah, taking a deed of trust to secure Afrah's obligation to pay the unpaid part of the purchase price.  However, Rockstone conceded in its motion for leave to file a second amended complaint that it can not avoid the transfer of the property to Afrah (who was a bona fide purchaser in good faith), and in its pretrial statement filed February 21, 2006, Rockstone conceded that Afrah had fully paid the deed of trust obligation.  Even if the conveyance to Smith is set aside, there is no longer a deed of trust obligation against Afrah that Rockstone could recover incident to avoiding the initial transfer from the debtor to Andre Smith.  There is thus no reason to keep Afrah as a defendant in this proceeding.  Presumably Rockstone will move to dismiss Afrah as a defendant once the fraudulent conveyance litigation resumes in the Superior Court.

Smith has been discharged of any debt based on conduct arising before the commencement of this bankruptcy case on October 21, 2004, including based on having made the alleged fraudulent conveyance.  However, she remains liable for any claim based on acts occurring postpetition.  If the Superior Court sets aside the transfer to Andre Smith, then Rockstone will attempt to show that it is entitled to enforce its judgment against Smith or against any traceable proceeds of the transfer.  If some of those proceeds were transferred to Sylvia Smith postpetition (that is, after she filed her bankruptcy petition on October 21, 2004), her liability for receiving those proceeds postpetition (assuming that such a liability would exist under nonbankruptcy law) would be unaffected by her bankruptcy discharge.

True, her discharge bars any claim against her based solely on having made the alleged prepetition fraudulent conveyance, but with respect to postpetition receipt of proceeds of an avoided fraudulent conveyance to Andre Smith, her discharge is of no help even though the basis for avoiding the transfer to Andre Smith was her prepetition conduct.  Her discharge only applies to prepetition claims, and a claim (if one exists under nonbankruptcy law) based on receiving proceeds postpetition of the fruits of any avoided fraudulent conveyance to Andre Smith would not be barred by her discharge.  Rockstone, however, will need to address in the resumed fraudulent conveyance litigation

whether it has any basis for asserting that Sylvia Smith has any liability based on *postpetition* conduct. Rockstone must show both postpetition events *and* a liability based on such postpetition events: if no such postpetition events exist or no liability exists based on postpetition events (such as receiving proceeds postpetition), then Rockstone cannot sue Sylvia Smith based on her discharged prepetition obligations, and it should dismiss her as a party.

### III

A judgment and an order follow in accordance with this decision.

[Signed and dated above.]

Copies to: All counsel and parties of record; the Office of the U.S. Trustee; and:

Wendell W. Webster
Chapter 7 Trustee
Webster, Fredrickson & Brackshaw
1775 K Street, NW
Suite 600
Washington, DC 20006